**Ex parte Richard ARENIVAS, Sr.**

No. 08–98–00287–CR.

Court of Appeals of Texas, El Paso.

Sept. 23, 1999.

---

**2.** The portion of the order relating to the bystander claim remains intact, not having

been appealed. *See supra* note 1.

Al W. Schorre, Jr., Dist. Atty., Eric Kalenak, Asst. Dist. Atty., Midland, for Appellant.

Rhett Hoestenbach, Odessa, for Appellee.

Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

The State of Texas brings this appeal pursuant to TEX.CODE CRIM.PROC.ANN. art. 44.01 (Vernon Supp.1999) challenging an order granting Richard Arenivas, Sr. (Appellee) habeas corpus relief on the basis of double jeopardy. We reverse.

## FACTUAL SUMMARY

Following her divorce from Appellee on July 9, 1997, Nellie Arenivas sought a protective order. On August 13, 1997, the honorable Dean Rucker, judge of the 318th District Court of Midland County, Texas, entered a protective order which, among other things, prohibited Appellee from directly communicating with Ms. Arenivas in a threatening or harassing manner or committing family violence against Ms. Arenivas and their two children, Richard, Jr. (Rick) and Jacob. A few months later, Appellee assaulted both Ms. Arenivas and twelve-year-old Rick during a heated dispute. The assault against Rick occurred when Rick attempted to push Appellee away from Ms. Arenivas. Appellee pushed Rick, punched him in the face, and then hit

Rick's head against a brick wall. Appellee also punched Ms. Arenivas in the face.

Ms. Arenivas filed a motion for contempt, and following a hearing, Judge Rucker found that Appellee had violated the protective order by directly communicating with Ms. Arenivas in a threatening and harassing manner and by striking both Ms. Arenivas and Rick and causing them physical harm and bodily injury. He assessed punishment at a fine of $500 and confinement in the county jail of Midland County for a period of six months for each separate violation. On May 19, 1998, a grand jury indicted Appellee for two counts of injury to a child in connection with the assault of Rick. Relying on the double jeopardy provisions found in both the United States and Texas Constitutions, Appellee filed a pretrial application for writ of habeas corpus contending that his criminal prosecution is jeopardy barred because it threatens a second punishment for the same offense. The trial court granted habeas corpus relief and dismissed the indictment with prejudice.

## DOUBLE JEOPARDY

In its sole issue for review, the State asserts that the criminal prosecution for injury to a child does not violate the double jeopardy clause, and therefore, the trial court erred in granting habeas corpus relief. We agree.

 The Double Jeopardy Clause of the United States Constitution provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. Amend. 5. Article I, Section 14 of the Texas Constitutes states: "No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction." TEX. CONST. Art. I, § 14.[1] These protections apply to: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Ex parte Rhodes,* 974 S.W.2d 735, 738 (Tex.Crim.App.1998); *Moncada v. State,* 960 S.W.2d 734, 741 (Tex.App.—El Paso 1997, pet. ref'd). This case involves the third protection. Although Appellee has not been punished a second time, the Double Jeopardy Clause protects against more than the actual imposition of two punishments for the same offense; by its terms, it protects a criminal defendant from being twice put in jeopardy for such punishment. *Witte v. U.S.,* 515 U.S. 389, 115 S.Ct. 2199, 2204, 132 L.Ed.2d 351 (1995). Thus, the Double Jeopardy Clause "prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense." *Id.,quoting Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938).

The State relies almost exclusively on Justice Scalia's opinion for the Court in *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), and argues that double jeopardy does not apply here because the criminal offense involves elements not found in the contempt offense. Appellee counters that we must also consider the Court of Criminal Appeals' interpretation and application of *Dixon* in *Rhodes.* While we agree with Appellee, *Rhodes* does not support the trial court's conclusion that this prosecution is jeopardy barred. Instead, we find that both *Dixon* and *Rhodes* support the State's position.

---

1. Conceptually, the state and federal constitutional provisions are identical. *Phillips v. State,* 787 S.W.2d 391, 393 n. 2 (Tex.Crim. App.1990); *Ramirez v. State,* 895 S.W.2d 405, 406 (Tex.App.—El Paso 1994), *pet. dism'd improv. granted, Ex parte Ramirez,* 919 S.W.2d 435, 436 (Tex.Crim.App.1996). Because Article I, Section 14 does not afford greater rights or protection than the Fifth Amendment, *Washington v. State,* 946 S.W.2d 912, 913–14 (Tex.App.—Austin 1997, pet. ref'd), we address the State's contentions by relying primarily on authority interpreting the federal provision.

## United States v. Dixon

In *Dixon*, a 1993 plurality decision, the United States Supreme Court addressed in two consolidated cases whether double jeopardy bars a criminal prosecution following a criminal contempt conviction for violation of a judicial order which prohibits a criminal act. *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).[2] Dixon violated a bond condition that he not commit any criminal offense by allegedly possessing cocaine with intent to distribute. *Dixon*, 509 U.S. at 691, 113 S.Ct. at 2853. In a case strikingly similar to the facts presented in the instant case, Foster violated a civil protection order, which required that Rhodes not "molest, assault, or in any manner threaten or physically abuse" his wife, by assaulting her. *Id.*, 509 U.S. at 692–93, 113 S.Ct. at 2854. A majority of the members of the Supreme Court overruled the same-conduct test formulated only three years earlier in *Grady v. Corbin*[3] and instead indicated that the same-elements test of *Blockburger*[4] is the primary test to use when reviewing a double jeopardy claim. *See Rhodes*, 974 S.W.2d at 738–39 and n. 9 (discussing the holding of *Dixon*). This test inquires whether each offense contains an element not contained in the other; if not, they are the same offense and double jeopardy bars additional punishment and successive prosecution. *Dixon*, 509 U.S. at 696, 113 S.Ct. at 2856 (opinion of Scalia, J.). Ostensibly applying *Blockburger*, the plurality concluded that Dixon's subsequent criminal prosecution for possession of cocaine with intent to distribute is jeopardy barred while only one of Foster's four subsequent criminal prosecutions is jeopardy barred. *Dixon*, 509 U.S. at 700–03, 113 S.Ct. at 2858–59.

## Ex parte Rhodes

*Rhodes* involved prosecution for interference with child custody following a contempt conviction for violation of a custody order.[5] The divorce decree between Rhodes and his wife ordered that the child reside in Harris County, Texas, and enjoined either party from changing the child's county of residence without prior court approval. *Rhodes*, 974 S.W.2d at 736. Rhodes, in violation of the order, removed his child to Malaysia and Singapore for almost one year. *Id.* During this time, Rhodes' wife instituted contempt proceedings for violation of the custody order. *Id.* at 736–37. Upon his return to the United States, Rhodes was charged with interference with child custody. *Id.* at 736; *see* Tex.Pen.Code Ann. § 25.03 (Vernon 1994). The court with jurisdiction of the contempt proceeding found Rhodes in contempt and assessed punishment at a $100 fine and $2,500 in attorney's fees. *Id.* at 737. Rhodes subsequently filed an application for writ of habeas corpus in the court where his criminal charges were pending. *Id.* That court found that double jeopardy barred his prosecution for interference with child custody due to his prior

---

**2.** The District of Columbia Court of Appeals consolidated the cases involving Alvin Dixon and Michael Foster since they raised similar double jeopardy issues. *Dixon*, 509 U.S. at 693–94, 113 S.Ct. at 2854.

**3.** *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990).

**4.** In *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Court stated what has since become referred to as the *same-elements test*:

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

*Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182.

**5.** We note that the legal question involved in *Rhodes* is somewhat different than the precise legal question presented in *Dixon* or the instant case because *Rhodes* did not involve violation of a judicial order prohibiting a criminal act. *See Dixon*, 509 U.S. at 697, 113 S.Ct. at 2856 (stating that first question is whether *Blockburger* analysis permits subsequent prosecution in criminal contempt context where a judicial order has prohibited a criminal act).

contempt conviction and the State appealed. *Id.*

The Court of Criminal Appeals pointed out in *Rhodes* that the members of the Supreme Court could not agree on how the *Blockburger* test applied under the facts of the two consolidated cases involved in *Dixon. See Rhodes*, 974 S.W.2d at 738. The *Rhodes* Court considered the true holding of *Dixon* so difficult to ascertain that it applied the legal reasoning of each separate opinion in *Dixon* to the facts before it to determine whether a majority of members from that decision would find that Rhodes' subsequent prosecution is jeopardy barred; the Court then tallied the "votes" to determine the outcome of the case. *Rhodes*, 974 S.W.2d at 739. In that fashion, the Court hoped to replicate what is the essential "holding" of *Dixon. Id.* The Court ultimately determined that Rhodes' criminal prosecution was jeopardy barred. *Id.* at 740–42.[6] That an appellate court must undertake such an unorthodox approach indicates that *Dixon*, while binding precedent, should be reexamined. We reluctantly employ the same analysis.

*Application of Dixon and Rhodes*

■ Justice Scalia's *Blockburger* analysis, joined by Justice Kennedy, compared the terms of the court order underlying the contempt charge with the elements of the criminal offense. *See Dixon*, 509 U.S. at 697–703, 113 S.Ct. at 2856–59 (opinion of Scalia, J.); *see also Rhodes*, 974 S.W.2d at 740 (summarizing Justice Scalia's approach). For purposes of double jeopardy analysis, the elements of constructive criminal contempt are: (1) a knowing violation (2) of a reasonably specific order. *Rhodes*, 974 S.W.2d at 740–41. The trial court

found Appellee in contempt of an order prohibiting Appellee from committing family violence. The protective order defined family violence as follows:

Family violence is defined in Section 71.01(b)(2) of the Texas Family Code as 'an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, or assault, or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defense measures to protect oneself.'

Thus, the elements of Appellee's contempt conviction are: (1) Appellee, as a member of a family or household; (2) committed an act against another member of the same family or household; (3) that was intended to result in physical harm, bodily injury, or assault; (4) while knowing that this conduct is a violation of the court order. The indictment alleged in the first count that Appellee committed injury to a child by intentionally or knowingly causing bodily injury to Rick, a child younger than fourteen years of age. In the second count, it alleged that Appellee recklessly or with criminal negligence caused bodily injury to Rick. Pursuant to the relevant portion of Section 22.04 of the Penal Code, the elements of injury to a child are: (1) intentionally, knowingly, recklessly, or with criminal negligence, by act, causing bodily injury to a child.[7] Even though the "knowing" culpable mental state and assaultive elements are the same in each offense, the injury to a child offense requires that the State prove that the victim is younger than fourteen years of age, an

---

**6.** In her concurrence, Judge Keller utilized only the *Blockburger* test formulated by Chief Justice Rehnquist in *Dixon. See Rhodes*, 974 S.W.2d at 742–43 (Keller, J., concurring opinion). Presiding Judge McCormick took yet another tack. He stated that because "it is difficult if not impossible to determine 'the holding of the Court' on some of the issues addressed in *Dixon*," the Court of Criminal Appeals should adhere to the traditional view

in Texas that contempt proceedings in civil cases do not implicate double jeopardy principles. *See Rhodes*, 974 S.W.2d at 744 (McCormick, P.J., dissenting opinion).

**7.** Section 22.04(c)(1) defines child as a person fourteen years of age or younger. Tex.Pen. Code Ann. § 22.04(c)(1).

element not found in the contempt offense. Likewise, the contempt offense requires the movant to prove elements not found in the criminal offense, namely, that both the actor and victim are members of the same family or household and that the actor knew his conduct violated the court order. Accordingly, under Scalia's *Blockburger* test, the two offenses are not the same, and therefore, the injury to a child prosecution is not jeopardy barred.

Chief Justice Rehnquist, joined by Justices O'Connor and Thomas, found that none of the criminal prosecutions were barred under *Blockburger*. *Dixon*, 509 U.S. at 713, 113 S.Ct. at 2865 (opinion of Rehnquist, C.J.). In their view, the same-elements test required a reviewing court to focus, not on the terms of the particular court orders involved, but on the elements of contempt of court in the ordinary sense. *Id.* Chief Justice Rehnquist would adhere to the traditional view that double jeopardy does not bar a subsequent prosecution based on conduct for which a defendant has been held in criminal contempt. *Id.* Because the generic crime of contempt of court has different elements than the substantive criminal charges at issue in the cases of Dixon and Foster, they were separate offenses under *Blockburger*. *Id.*, 509 U.S. at 714, 113 S.Ct. at 2865; *see Rhodes*, 974 S.W.2d at 741. Under this approach, Appellee's prosecution for injury to a child is not jeopardy barred. *See Rhodes*, 974 S.W.2d at 741.

We need not proceed further to consider the opinions of Justices White, Blackmun, or Souter because we have already determined that five members of the Supreme Court would find that Appellee's prosecution is not barred by the Double Jeopardy Clause of the United States Constitution. Accordingly, the State's sole issue for review is sustained. We reverse the order of the trial court granting habeas corpus relief and dismissing the instant prosecution, and the cause is remanded to the trial court for further proceedings consistent with this opinion.